Patrick S. Aguirre (SBN: 189103)
attorney@paguirrelaw.com
**LAW OFFICES OF PATRICK S. AGUIRRE AND ASSOCIATES**
1107 R. Street
Fresno CA, 93721
Telephone: (562) 904-4337
Facsimile: (562) 928-3999

Attorney for Defendant,
CHRISTOPHER JOSE CONTRERAS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER JOSE CONTRERAS,<br><br>Defendant. | Case No. 21-CR-00159-JLT<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date: April 29, 2024<br>Time: 10:00A.M.<br>Court: Hon, Jennifer L. Thurston |

Defendant CHRISTOPHER JOSE CONTRERAS, by and through his attorney of record, Patrick S. Aguirre, hereby submits his sentencing memorandum.

Dated: 4/16/24

                                      By: **_/s/ Patrick S. Aguirre_**
                                         PATRICK S. AGUIRRE
                                         Attorney for Defendant,
                                         CHRISTOPHER JOSE CONTRERAS

# I.
# INTRODUCTION

On November 27, 2023, Christopher Jose Contreras entered a guilty plea to two violations of 18 U.S.C. § 2422(b).

Pursuant to the plea agreement, the parties agreed to a sentence of no less than 120 months with no less than 180 months supervised release. PSR ¶ 109. Further, Mr. Contreras has agreed not to seek early termination of supervised release. *Id.*

Mr. Contreras respectfully requests a sentence of 120 months with 180 months supervised release.

# II.
# FACTUAL BACKGROUND

In July 2020, Mr. Contreras engaged in conversations on "Skout," a social networking app, with "Morgan," an undercover Homeland Security agent posing as a 13-year-old girl. PSR ¶ 5. Mr. Contreras asked Morgan to send him pictures of herself, and sent her explicit photographs. PSR ¶ 7. On July 31, 2020, Mr. Contreras arranged to meet Morgan, and was arrested when he arrived at the meeting location. PSR ¶ 11. Upon arrest, he admitted to messaging Morgan and that he knew she was 13-years-old. *Id.*

On October 6, 2020, Mr. Contreras arranged to meet K.W., a 15-year-old living in a group home who he had met on the "Meet Me" messaging app. PSR ¶ 16. K.W. told investigators that Mr. Contreras picked her up and took her to his house, where the two had sex. *Id.* She said he knew she was 15-years-old. *Id.*

# III.
# CONSIDERATION OF THE 18 U.S.C. § 3553(a) FACTORS

In determining the appropriate sentence for Mr. Contreras, the Court must consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), including, but not limited to: (1) the history and characteristics of the offender; (2) the nature and the circumstances of the offense; (3) the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence; (4) the

applicable sentencing range under the advisory sentencing guidelines; and (5) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a); *see also United States v. Booker*, 543 U.S. 220 (2005).

To achieve the Guidelines' "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States,* 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)), the district court must "find[] a sentence that accurately reflects both the seriousness of the underlying federal offense and the extent and nature of the defendant's criminal past." *United States v. Asberry*, 394 F.3d 712, 719 (9th Cir. 2005). "Sentencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a particular crime." *United States v. Harris*, 679 F.3d 1179, 1183 (9th Cir. 2012).

**A.    Mr. Contreras's History and Characteristics**

Mr. Contreras's history and characteristics are strong factors in mitigation. *Penry v. Lynaugh,* 492 U.S. 302, 319 (1989) ("defendants who commit criminal acts that are attributable to a disadvantaged background…may be less culpable than defendants who have no such excuse"); *Landrigan v. Schriro,* 441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse.").

Mr. Contreras grew up in Fresno. PSR ¶ 66. The family home was abusive and Mr. Contreras watched his father—who suffered from a methamphetamine addiction—physically abuse his mother. PSR ¶ 68. The abuse would be directed at him when he attempted to intervene to protect his mother. *Id.* The abuse stopped when Mr. Contreras was around 16 and strong enough to stop his father. *Id.*; *United States v. Walter*, 256 F.3d 891 (9th Cir. 2001) (downward departure appropriate where defendant suffered beatings by father and sexual abuse by cousin); *United States v. Brown,* 985 F.2d 478 (9th Cir. 1993) (downward departure appropriate where defendant severely abused and neglected during childhood).

However, there were also good times, and Mr. Contreras has fond memories of going to play in the snow, family holidays, and nice dinners. PSR ¶ 69. He was provided for financially and encouraged to play sports at school. *Id.* Mr. Contreras's mother is saddened by the prospect of his imprisonment; his father is also having difficulty but remains supportive. PSR ¶ 27; *see United States v. Autery,* 555 F.3d 864, 874 (9th Cir. 2009) (that a defendant has the support of his family is a characteristic that can support a downward variance because such characteristics "increase[] the likelihood that the [defendant] can again become a productive, non-threatening member of free society, thus making more severe punishment less appropriate"); *see also* Shirley R. Klein *et al., Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures."); Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, *Gender, Individuality and the Federal Sentencing Guidelines*, 8 Fed. Sent'g Rep. 148 (1995) ("[T]he better family ties are maintained[,] the lower the recidivism rate").

Mr. Contreras suffers from major depressive disorder and attention deficit disorder. PSR ¶ 77. He attempted suicide at age 15 or 16 after fighting with his parents; he was placed on a 72-hour hold but never provided counseling. PSR ¶ 76.

Mr. Contreras worked as a forklift driver and palletizer for six years and as an Amazon delivery driver for two years. PSR ¶ 86-88; *see United States v. Ruff,* 535 F.3d 999 (9th Cir. 2008) (defendant's "strong history of employment" valid consideration in sentencing defendant to one day in jail and three years of supervised release where Guidelines range was 30 to 37 months). He lost the job due to his arrest in this matter. He would like to pursue his GED, attend college classes, and obtain vocational training while in custody. PSR ¶ 85.

Mr. Contreras has a decade-old conviction for misdemeanor obstruction of a public officer for which he served 10 days in jail. PSR ¶ 58.

## B. Nature and Circumstance of the Offense

Mr. Contreras violated the law in this case and he has admitted his guilt to the court. The statutory mandatory minimum sentence inherently reflects Congress's determination that it adequately punishes the conduct.

## C. Respect for the Law, Just Punishment, and Deterrence

Mr. Contreras has promptly taken responsibility for his violation of the law. This is reflected in the departure for acceptance of responsibility. He further expressed remorse for his conduct to the Probation Officer. PSR ¶ 28. He advised the Probation Officer that he wishes he made better choices, and acknowledged the strain his conduct has placed on his family. PSR ¶ 27.

The likelihood that the defendant "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." *Pepper v. United States,* 562 U.S. 476, 492 (2011). Mr. Contreras has never before served a lengthy custodial term. Thus, a lengthy sentence is unnecessary to impress upon him the seriousness of his conduct.

Further, a lengthy custodial sentence would undermine rehabilitation by preventing Mr. Contreras from reintegrating with his family and obtaining lawful employment; in fact, a lengthy custodial sentence would increase the risk of recidivism. *See* U.S. Sent'g Comm'n, Staff Discussion Paper, *Sentencing Options Under the Guidelines* (1996) (recognizing the "criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties"); Justin Murray, *Reimagining Criminal Prosecution*, American Criminal Law Review, Vol. 49, No. 3 (2012) at 1565 ("Rather than rehabilitating prisoners, modern incarceration tends to make prisoners more violent, antisocial, and prone to criminality"). Further, the felony conviction on his record will be a significant punishment in itself. *United States v. Smith*, 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive.").

1    Additionally, the lengthy period of supervision will ensure that Mr. Contreras leads a law-abiding life, and provides no margin of error in the future.

Because of his acceptance of responsibility and potential for rehabilitation, a sentence of 120 months followed by 180 months supervised release is adequate to accomplish the goals of sentencing and would also uphold the parsimony principle of § 3553(a), which mandates a sentence "not greater than necessary."

**D.     Advisory Guideline Range**

The advisory Guidelines range is a relevant consideration in fashioning a sentence; however, it should not "be given more or less weight than any other [factor]. While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

The Probation Officer has calculated an adjusted offense level of 38 with a three-level reduction for acceptance of responsibility for a total offense level of 35. PSR ¶ 53. Mr. Contreras has one criminal history point, resulting in CHC I. PSR ¶ 60.

The Probation Officer has calculated a Guidelines range of 168 to 210 months based on an offense level of 35. PSR ¶ 94.

The requested sentence of 120 months is below the Guidelines range. However, this sentence, with a lengthy period of supervision to follow, reflects both the seriousness of the offense and Mr. Contreras's mitigating personal history.

//
//
//
//
//
//
//

# IV.
# CONCLUSION

For the aforementioned reasons, Mr. Contreras respectfully requests the Court impose a sentence of 120 months to be followed by 180 months of supervised release.

Dated: April 16, 2024

By: _/s/ Patrick S. Aguirre_
PATRICK S. AGUIRRE
Attorney for Defendant,
CHRISTOPHER JOSE CONTRERAS